UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAIVONE HARPER,
*Plaintiff*,

v.

No. 3:24-cv-1416 (VAB)

TIMOTHY SHAW *et al.*,
*Defendants*.

**INITIAL ORDER REVIEW**

Daivone Harper ("Plaintiff") is a prisoner in the custody of the Connecticut Department of Correction. He filed this Complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that Stamford police officers, his public defender, and a judge violated his constitutional rights.

Based on the initial review, the Complaint will be **DISMISSED** in part.

Mr. Harper may proceed with his Fourth Amendment claim regarding the unreasonable search of his home against the following Defendants in their individual capacities for monetary damages: Shaw, Cooper, Spinosa, and Rosado.

The Court otherwise **DISMISSES** all of Harper's remaining claims.

**I.    BACKGROUND**

Mr. Harper has sued six Defendants: Stamford Police Chief Timothy Shaw, Sergeant Cooper, police officer Michael Espinoza, police officer Justin Rosado, Judge John Doe, and a public defender, Lisa Stevens.

On the morning of August 2, 2023, Stamford police officers Michael Spinosa, Justin Rosado, and other officers in plain clothes and in uniform allegedly came to Mr. Harper's home.[1]

---

[1] Doc. # 1 at 4.

The officers allegedly entered the gates to Mr. Harper's property and arrested him outside.[2] They allegedly took Mr. Harper to his front yard, where he allegedly asked officers more than twenty times to see their warrant.[3] As one of the officers allegedly opened the front door of Mr. Harper's home without knocking, Mr. Harper allegedly yelled to his grandmother not to let the police inside because they did not have a search warrant.[4] Mr. Harper's grandmother allegedly refused entry to the police, who allegedly ran into the home, dragged her down the stairs, and handcuffed her.[5] Officers then allegedly entered the home and searched it.[6]

Mr. Harper allegedly told his public defender, Ms. Stevens, repeatedly that the police unlawfully arrested him and illegally searched his home without a warrant.[7] Stevens allegedly did not challenge the alleged illegal search and seizure.[8] Mr. Harper allegedly did not receive a copy of the warrant until a court date on April 2, 2024.[9] When Mr. Harper allegedly later met with Sergeant Cooper to provide information, Sergeant Cooper allegedly acknowledged that the search and seizure were illegal.[10]

Mr. Harper seeks monetary damages for mental and emotional distress, pain and suffering, and general damages.[11]

---

[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See id.*
[6] *See id.*
[7] *See id.* at 5.
[8] *See id.*
[9] *Id.* (internal quotation mark omitted).
[10] *Id.*
[11] *Id.*

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, prisoner civil complaints must be reviewed, and any complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, must be dismissed. 28 U.S.C. § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint— (1) is frivolous, malicious, or fails to state on a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.").

In reviewing a *pro se* complaint, the allegations must be construed liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[12] A *pro se* complaint nevertheless must allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See id.* ("'Nonetheless, a *pro se* complaint must state a plausible claim for relief.'") (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)).

## III.     DISCUSSION

Liberally read, Mr. Harper's Complaint alleges two Fourth Amendment claims related to Mr. Harper's alleged false arrest and illegal search of his home, a Sixth Amendment claim for ineffective assistance of counsel claim against Ms. Stevens; and an unspecified claim against Judge Doe.

The Court will address each of these claims in turn.

---

[12] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

**A.  The False Arrest Claim**

The Second Circuit has held that a false arrest claim asserted under § 1983 "to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, [is] 'substantially the same' as [a] claim[ ] for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citations omitted). To state a false arrest claim under section 1983 in Connecticut, a plaintiff must not only plead facts to satisfy the elements of a false arrest claim under Connecticut law but must also plead facts to demonstrate "an unreasonable deprivation of liberty in violation of the Fourth Amendment." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order).

Under Connecticut law, false arrest and false imprisonment claims require pleading and proof of the same four elements. *Arpino v. Spera*, No. 3:22-CV-01114 (KAD), 2022 WL 21751856, at *4 (D. Conn. Sept. 22, 2022). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019). "The elements of such a claim under Connecticut law are: (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Id.*

In addition, the Second Circuit has held that claims of false imprisonment or false arrest under Connecticut law require a plaintiff to prove that there was a favorable termination of the proceedings against him. *See Miles v. City of Hartford*, 445 F. App'x 379, 382–83 (2d Cir. 2011) (citing *Roesch v. Otarola,* 980 F.2d 850, 853-54 (2d Cir. 1992)) (noting favorable termination is an element of a section 1983 claim "sounding in false imprisonment or false arrest" under

4

Connecticut law). *See also Miles v. City of Hartford,* 2010 WL 148452 at *5 (D. Conn. Jan. 12, 2010) (noting *Roesch* "remains good law that this Court must follow absent a ruling to the contrary from the Second Circuit or a Connecticut appellate court"); *Hernaiz v. Rivera*, No. 3:24-CV-94 (JAM), 2024 WL 2053466, at *2 (D. Conn. May 7, 2024) (dismissing false arrest claims against police officers because "Hernaiz has not alleged a valid claim for false arrest because he has not alleged that the charges for which he was arrested have been terminated in his favor"). A "favorable termination" means that a plaintiff must show that his "prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).

But Mr. Harper does not allege favorable termination in his Complaint, nor could he. Harper alleges having been arrested in Stamford on October 2, 2023.[13] State of Connecticut court records show three cases resulting from Harper's October 2, 2023, arrest in Stamford: S01S-CR23-0251478-S, S01S-CR23-0251479-S, S01S-CR23-0251515-S. *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Pending Cases Name Summary*, https://www.jud2.ct.gov/crdockets/ parm1.aspx (search by: Defendant = HARPER, First Initial = D) (last visited October 15, 2024).[14] According to these records, all three cases remain pending. *See Pending Criminal / Motor Vehicle – Search by Docket Number*, https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Pend (last visited February 5, 2025). Because these cases remain pending, Harper cannot allege favorable termination. *See Nelson v. City of Stamford*, No. 3:09-CV-1690 VLB, 2012 WL 233994, at *11 (D. Conn. Jan. 25,

---

[13] Doc. # 1 at 4.
[14] The Court may take judicial notice of these records. *See Scherer v. Equitable Life Assurance Soc'y,* 347 F.3d 394, 402 (2d Cir. 2003) ("[I]t is appropriate for this court to affirm the district court by taking judicial notice of state court records which leave no doubt as to the correctness of the district court's determination."); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

5

2012) (concluding that plaintiff could not "establish a favorable termination because her criminal case is still pending more than five years after her arrest").

Accordingly, Harper's false arrest claim must be dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). *See Owens v. Perez*, No. 3:17CV657(RNC), 2017 WL 11807650, at *4 (D. Conn. Dec. 6, 2017), *report and recommendation adopted*, No. 3:17-CV-657(RNC), 2018 WL 11580891 (D. Conn. Jan. 18, 2018) (dismissing false arrest and malicious prosecution claims without prejudice where court concluded that plaintiff's pending criminal charges were not favorably terminated).

### B. The Unreasonable Search Claim

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), "unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona,* 437 U.S. 385, 393–394 (1978).

Mr. Harper claims that his Fourth Amendment rights were violated because police searched his home without a search warrant.[15] According to Mr. Harper, the search of his home was presumptively unreasonable because the police searched it without a search warrant.[16] Harper alleges that he later received a copy of "the warrant,"[17] but it is unclear from the

---

[15] *See* Doc. # 1 at 4.
[16] *See id.*
[17] *Id.* at 5.

6

complaint whether "the warrant" refers to an arrest warrant or a search warrant. In any event, for now, he has sufficiently stated a Fourth Amendment claim.

Accordingly, this claim may proceed against Stamford officers Shaw, Cooper, Spinosa, and Rosado.

While Mr. Harper does not specify whether he asserts his § 1983 claims against Shaw, Cooper, Spinosa, and Rosado in their official or individual capacities, he cannot obtain money damages against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)( "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690 n.55 (1978)).

Accordingly, the Court will construe Mr. Harper's Fourth Amendment claim as one brought against Shaw, Cooper, Spinosa, and Rosado in their individual capacities.

To the extent that any official capacity claim exists against them, it would effectively be a claim against the City of Stamford. *See id.* at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suite against the entity." citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985))).

To state a so-called *Monell* claim against a municipality, a plaintiff must identify a municipal policy or custom that was the "moving force behind" a constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). But Mr. Harper does not identify a municipal policy or custom in his Complaint. To the extent that the Complaint seeks damages from Shaw, Cooper, Spinosa, and Rosado in their official capacities, *i.e.*, from the City of Stamford, such claims are dismissed

7

without prejudice because the plaintiff has not alleged that a policy or custom of the City of Stamford caused him a constitutional injury.

"A plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004). "Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

While Mr. Harper alleges that Spinosa and Rosado were personally involved in the search of his home, he does not allege that Shaw and Cooper were personally involved in that search.[18] Mr. Harper does allege that "other[ ]s in plain clothes and in uniform" may have been involved in the search.[19] As a result, it is unclear at this early stage whether those "other" officers may have been Shaw and Cooper or whether Shaw or Cooper ordered the search, an issue capable of clarification at the discovery stage.

Accordingly, Harper's unreasonable search claim under the Fourth Amendment may proceed against Shaw, Cooper, Spinosa, and Rosado in their individual capacities.

---

[18] *See* Doc. # 1 at 4.
[19] *See id.*

8

### C. The Ineffective Assistance of Counsel Claim

At best, Mr. Harper's claim against his public defender, Ms. Stevens, is an ineffective assistance of counsel claim, one relating to her alleged failure to move to suppress the allegedly illegally obtained evidence from the search.[20] But a civil action brought under 42 U.S.C. § 1983 is not the appropriate vehicle to raise a claim of ineffective assistance of counsel. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) ("[A]n ineffectiveness cause of action would be inappropriate in a proceeding brought under § 1983.") (citations omitted).

Even if it were, Stevens was not acting "under color of state law" when she represented Mr. Harper; therefore, she is not subject to suit under 42 U.S.C. § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981) (public defenders do not act "under color of state law" and therefore are not subject to suit under 42 U.S.C. § 1983); *Osuch v. Gregory*, 303 F. Supp. 2d 189, 196 (D. Conn. 2004) (dismissing § 1983 action against public defender for ineffective assistance).

Accordingly, Mr. Harper's ineffective assistance of counsel claim against Stevens will be dismissed with prejudice.

### D. The Claim Against Judge John Doe

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mirales v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). "The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the

---

[20] *See id.* at 5.

act and regardless of motivation." *Tapp v. Champagne*, 164 F. App'x 106, 107–08 (2d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

There are two exceptions to judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune [from] actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12.

Mr. Harper names Judge John Doe as a Defendant,[21] although Mr. Harper does not otherwise mention Judge Doe in the Complaint. In any event, there is nothing in his Complaint that can reasonably be construed as supporting the application of either exception to the application of judicial immunity.

Accordingly, any claim against Judge John Doe will be dismissed with prejudice.

### IV. CONCLUSION

For the reasons set forth above, the Complaint will be **DISMISSED** in part.

Mr. Harper may proceed with his Fourth Amendment claim regarding the unreasonable search of his home against the following Defendants in their individual capacities for monetary damages: Shaw, Cooper, Spinosa, and Rosado.

The Court otherwise **DISMISSES** all of Mr. Harper's remaining claims.

(1) The Clerk of Court shall mail a waiver of service of process request packet containing the Complaint and this Order to defendants Shaw, Cooper, Spinosa, and Rosado at the Stamford Police Department, 725 Bedford Street, Stamford, CT 06901, by **February 28, 2025**, and report to the Court on the status of the waiver request by no later than **March 14, 2025**. If a Defendant fails to return the

---

[21] *See* Doc. # 1 at 1.

waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on that Defendant, and they shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(2) Defendants Shaw, Cooper, Spinosa, and Rosado shall file a response to the Complaint, either an Answer or motion to dismiss, by **May 16, 2025**.

(3) The Clerk of Court shall send Mr. Harper a copy of this Order.

(4) Discovery shall close by **September 26, 2025**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk of Court must send to Mr. Harper with a copy of this Order. The Order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(5) The deadline for summary judgment motions shall be **October 31, 2025**.

(6) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(7) If Mr. Harper changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)1 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Harper must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Harper has more than one pending case, he

must indicate all of the case numbers in the notification of change of address. Mr. Harper must also notify the Defendants or any defense counsel of his new address.

(8) Mr. Harper shall utilize the Prisoner E-Filing Program when filing documents with the Court. Mr. Harper is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

**SO ORDERED** at New Haven, Connecticut, this 7th day of February 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE